IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 25-460-29 |
| SONIA RAMOS DE JESUS | : | |

**GOVERNMENT'S RESPONSE TO THE DEFENDANT'S APPEAL OF THE UNITED STATES MAGISTRATE JUDGE'S ORDER OF PRETRIAL DETENTION**

Defendant SONIA RAMOS DE JESUS was a committed street dealer for the Weymouth Drug Trafficking Organization ("Weymouth DTO") whose record on the block stretches back to 2016, when she participated in a violent attack on a police officer, alongside her daughter, the then-DTO leader (Co-Conspirator 1)'s paramour.    RAMOS DE JESUS then sustained two more arrests on 3100 Weymouth Street in 2018, both times for dealing drugs, and in 2023, she was arrested *a fourth time* after selling heroin to undercover Philadelphia police officers—which led to a conviction and sentence of 2 years' probation.    But that did not deter RAMOS DE JESUS. Throughout her term of probation and following it, she continued to sell drugs for the DTO.

Based on this conduct and more on October 22, 2025, a grand jury in the Eastern District of Pennsylvania returned a 41-count indictment charging SONIA RAMOS DE JESUS and 32 other co-defendants running one of Philadelphia's largest and most entrenched fentanyl and cocaine trafficking operations, centered on the 3100 block of Weymouth Street, from 2016 through 2025.

I.    **BACKGROUND**

On November 4, 2025, following a hearing, the Honorable Caroline G. Cinquanto ordered that RAMOS DE JESUS be detained pending trial. On November 10, 2025, RAMOS

- 1 -

DE JESUS appealed Judge Cinquanto's decision to this Court, arguing that RAMOS DE JESUS is neither a danger to the community nor a flight risk and that her proposed release plan—in which she would live with her daughter, Karyna Hernandez, at 2150 Tyson Avenue—is suitable. The defendant presented the same release plan to Judge Cinquanto, at the initial detention hearing, who agreed with the government that releasing the defendant to the home of Karyna Hernandez was insufficient to protect the public.   As the paramour of the former DTO-leader, Ms. Hernandez had a front row seat to the affairs of the Weymouth DTO for many years, if not decades. She, herself, was arrested twice on the 3100 block of Weymouth Street (in 2016 and 2019) after interfering with law enforcement actions, both times aggressively attacking police officers in order to stop them from investigating the DTO's activities.   Ms. Hernandez was present in November 2024 when the former DTO leader was murdered, and her electronic devices—found at the scene of his death—were seized and are still being searched pursuant to federally authorized search warrants.   Ms. Hernandez is a person of interest in the ongoing FBI investigation, given her long-time involvement with now deceased Co-Conspirator 1.

Ms. Hernandez's home is not a suitable place for pretrial release, and Ms. Hernandez is not a suitable "custodian" (as offered by the defense) because of her close ties to the criminal DTO in this case.   Meanwhile, defendant RAMOS DE JESUS agrees that this placement is her only potential release plan in Philadelphia.   For that reason and others, the detention order should remain in place.

## II.    RELEVANT LAW

The defendant's appeal should be rejected. Although a magistrate judge's detention order is subject to *de novo* review, "the reasons the magistrate judge articulated must be given 'respectful consideration.'" *United States v. Rice*, Crim. No. 11-344-01, 2011 WL 5942042, at *2 (E.D. Pa. Nov. 28, 2011) (citing *United States v. Suppa*, 799 F.2d 115, 120 (3d Cir.1986)). And indeed, Judge Cinquanto's decision is worthy of such consideration.

Defendant RAMOS DE JESUS was specifically charged with: conspiracy to traffic fentanyl, powder cocaine, and crack cocaine between 2016 and September 2025, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(C) (Count One); and distribution of fentanyl, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) (Count Seven). She is also named in numerous Overt Acts in connection with other drug sales and shifts for the DTO.   Although she does not face a statutory mandatory minimum, she faces a maximum penalty under the Controlled Substances Act on Count One of 20 years' imprisonment.   This gives rise to a rebuttable presumption that "no condition or combination of conditions will reasonably assure the appearance of RAMOS DE JESUS as required and the safety of the community" and that she should therefore be detained pretrial. *See* 18 U.S.C. 3142(e)(3)(A).

To overcome the statutory presumption in favor of detention, a defendant must present "credible evidence" at her detention hearing that she will appear as required and that she will not pose a risk of danger to the community upon release. *See United States v. Carbone*, 793 F.2d 559, 560 (3d Cir. 1986) (per curiam). Once the defendant has made the requisite showing, "the burden then shifts back to the government either to prove by a preponderance of the evidence that he is a risk of flight, or to prove by clear and convincing evidence that he poses a danger to

the safety of the community." *United States v. Mastrangelo*, 890 F. Supp. 431, 436 (E.D. Pa. 1995) (citing *United States v. Himler*, 797 F.2d 156, 161 (3d Cir. 1986)).

Even if the defendant is able to present such credible evidence, the presumption does not vanish. *Mastrangelo*, 890 F. Supp. at 436 (citation omitted). Rather, it "remains available to be considered by the court in determining whether to release or detain the defendant." *Id*. When making this determination, courts also look to the factors set forth in 18 U.S.C. § 3142(g), which include the nature and circumstances of the offense, the weight of the evidence against the defendant, the history and characteristics of the defendant, and the danger posed by the defendants' release.

Here, after being presented with information uncovered during the government's investigation, and after hearing argument from both counsel for the government and defense counsel, Judge Cinquanto decided that the government had met its burden. This Court should not disturb Judge Cinquanto's decision, which was well-supported by the facts leading to the charges against RAMOS DE JESUS.

## III. <u>OVERVIEW OF THE CASE</u>

The 41-count indictment in this case charges defendant SONIA RAMOS DE JESUS along with 32 other co-defendants, with a near decade-long conspiracy to traffic fentanyl, cocaine, and crack cocaine, in Philadelphia, from January 2016 through October 2025. Specifically, defendant RAMOS DE JESUS and her co-defendants were part of the drug trafficking group that has operated primarily on the 3100 block of Weymouth Street, Philadelphia, termed the "Weymouth DTO."

The 3100 block of Weymouth Street has plagued the City of Philadelphia of years, as it has functioned as what is effectively an open-air drug market that operates 24 hours a day, 365 days a year, where addicts can come to buy fentanyl, cocaine, and crack cocaine, up and down the block.   The Weymouth DTO uses multiple occupied and abandoned houses and lots on the block—as well as trash cans, ground drains, cars, tires, and porches—to store small to medium amounts of drugs in easily-accessible places, so they can be procured for buyers who arrive on the block to make drug transactions.

In addition to storing drugs in various locations along the 3100 block of Weymouth for daily sales by street dealers, the Weymouth DTO uses several off-the-block locations to package and store drugs that are delivered to the block through "reups."   Up until August 2025, when the FBI searched both locations, the Weymouth DTO used 6217 Tackawanna Street, in Philadelphia, as a bag-house for fentanyl, and it used a garage at 3326 Rorer Street, in Philadelphia, as a packaging and storage center for crack cocaine.   The Weymouth DTO also uses a particular lot on the block, at 3153 Weymouth Street, as a meeting place, stash location, and location to cook crack cocaine. The location, called the "bunker," consists of a drywall structure with a physically connected tent structure, with a door in between that can be opened or closed.

Over the course of the FBI and Philadelphia Police Department's investigations in this case, roughly 3.9 kilograms of fentanyl, 727 grams of crack cocaine, and 3.8 kilograms of powder cocaine were seized by law enforcement, either from controlled buys, arrests on the block, or the execution of search warrants.   But those amounts—arrived at through tallying up one-moment-in-time snapshots, either of drugs transacted with an individual buyer or drugs stored in a location for imminent sale—do not come close to representing the enormous quantity

of illegal drugs sold by this DTO over the 9-year conspiracy charged.   A conservative estimate, as the evidence underlying the case will show, is that the Weymouth DTO, for the 9-year conspiracy period charged, trafficked roughly 10-18 kilograms of fentanyl and 16-30 kilograms of crack cocaine, to buyers in Philadelphia.

The Weymouth DTO also commits violent assaults, including murders, to maintain control over its drug empire on the 3100 block of Weymouth Street and the surrounding blocks. The indictment describes assaults committed by defendants in this case, such as on November 7, 2024, when defendants JOSUE ONEILL ORTIZ-BETANCOURT and JONATHAN TORRES, along with Co-Conspirator 12 (now deceased) and another individual, chased a car off the 3100 block of Weymouth and repeatedly shot at the car around the corner, while defendant ELLIOT MATTEI-RODRIGUEZ, a/k/a "Elio," pulled out a firearm, chambered a round, and stood guard on the 3100 block of Weymouth.    On March 16, 2025, defendants JOHN DAVID LOPEZ-BORIA a/k/a "Grande," LUIS WILLIAMS, and Co-Conspirator 17 physically assaulted an individual on the block, as captured on pole camera.   On May 6, 2024, defendant ROMAN ROMAN-MONTANEZ and Co-Conspirator 12, now deceased, dragged an unknown person across the ground in the direction of the "bunker" at 3153 Weymouth Street, after which Co-Conspirator 12 struck the person with a rod.

Members of the Weymouth DTO routinely possess firearms, either on their persons but more commonly in vehicles, houses, porches, fences, or abandoned lots, that they use to protect their drug stash, drug proceeds, and commit or threaten violent assaults.   The indictment charges numerous instances in which Weymouth DTO members possessed firearms either on the block or shortly after leaving the block.   To name just a few examples: in January 2019, the DTO

stored three loaded firearms inside 3125 Weymouth Street; on August 27, 2019, defendant ANGEL RIOS-VALENTIN left the block with a loaded firearm—following a visit to 3152 Weymouth Street—and was convicted of a federal 922(g) offense; in December 2019, the DTO stashed a Hi-Point, Model 995 semiautomatic rifle, a Sig Sauer 9mm semiautomatic pistol, a Glock 26 9mm semiautomatic handgun, and a Keltec 9mm semiautomatic firearm, all inside of 3162 Weymouth Street;   on March 11, 2022, defendant ELLIOT MATTEI-RODRIGUEZ was found in possession of two loaded Glock firearms, shortly after he left 3152 Weymouth Street; on August 2, 2020, defendant ANGEMILL GONZALEZ-CLAUDIO, a/k/a "Angel," a/k/a "Angie," went up to a car on the 3100 block of Weymouth Street, opened the trunk, took out two bags that contained rifles visibly sticking out, and displayed one firearm to males on the street while depositing another firearm inside of a vehicle; in October 2022, defendants ROMAN-MONTANEZ and NANCY RIOS-VALENTIN had four loaded firearms in their residence, of 3152 Weymouth Street, while other DTO members possessed a Draco AK 47, an AR-15, and another loaded handgun, in other locations; just recently on August 13, 2025, defendant LUIS LEVANTE-MEDINA, a/k/a "Diamante," tossed a firearm onto the street as he was trying to evade law enforcement.   Also on August 13, 2025, when the FBI and local police searched the DTO's "bunker" at 3153 Weymouth Street, they recovered numerous rounds of loose ammunition of various calibers, including AK 47 rounds.

In addition, Weymouth DTO members—in order to promote the reputation of the Weymouth DTO and chill potential enemies from encroaching on the DTO's turf—will frequently appear in rap videos and other posts uploaded to Youtube and Instagram, in which

they display firearms, use hand signs or flash insignias for the Weymouth DTO, and threaten acts of violence against rivals.   Screenshots from some of these videos are below:

"Patroncito"



Shown above: Screenshot from YouTube video entitled "Patroncito," uploaded November 1, 2023 by an unindicted co-conspirator (Co-Conspirator 11), in which Co-Conspirator 12 (whose alias was "Panza") appears brandishing a firearm, and Co-Conspirator 11 raps the lyrics, "I'll get you with Panza with Draco and you're stiff."

"Philly Boy"





Shown above:   Screenshots from YouTube video entitled "Philly Boy," uploaded April 19, 2024

by an unindicted co-conspirator (Co-Conspirator 13), filmed on the 3100 block of Weymouth

Street, in which defendants ELLIOTT MATTEI-RODRIGUEZ, a/k/a "Elio," LUIS WILLIAMS,

JOSE SANTANA-GONZALEZ, a/k/a "Chipi," a/k/a "Chepo," and JOHN DAVID LOPEZ-

BORIA, a/k/a "Grande," appear next to individuals wielding firearms, making gestures of

violence or gang affiliation, and walking through streets that neighbor the 3100 block of

Weymouth Street

    "23"



    Shown above, screenshot from YouTube video entitled "23," uploaded May 18, 2024 by

Co-Conspirator 11, in which defendant JOHN DAVID LOPEZ-BORIA, a/k/a "Grande," appears

brandishing a firearm,   and in which LOPEZ-BORIA, Co-Conspirator 11, and others are shown

holding stacks of drug proceeds on the 3100 block of Weymouth Street.   The lyrics rapped

include, "You die today or you die today, I will make sure of it, They told me the facts, you're

talking to DEA."

    "Kaioken"



Shown above, screenshot from YouTube video entitled "Kaioken," uploaded January 16, 2025 by an unindicted co-conspirator, Co-Conspirator 17, in which Co-Conspirator is seen brandishing a handgun with an extended magazine on a stoop outside the "bunker" at 3153 Weymouth Street, and in which defendant JOHN DAVID LOPEZ BORIA, a/k/a "Grande" also appears.   In the video, Co-Conspirator 17 raps lyrics that include, "I don't talk, I get in and will come to hunt you, asshole."

The Weymouth DTO is an organized drug operation with an established scheduled of "shifts" for caseworkers and street dealers.   The schedule is distributed by leaders of the Weymouth DTO, such as defendants RAMON ROMAN-MONTANEZ and NANCY RIOS-VALENTIN, and sets forth which member of the group will be working on a given day of the week and during what time block.

The evidence in this case includes 6 months of recordings from Title III wiretaps—on phones belonging to five different defendants in the indictment—which in turn demonstrates that

the DTO continues to work in an organized, business-like fashion, assigning shifts to different DTO members, coordinating the delivery of new installments of fentanyl, cocaine and crack to the block on a regular basis, and   collecting and pooling proceeds from the sales of drugs so that they go back into a common pot. The defense concedes in their filing that the amount of evidence in this case, with regards to N. RIOS-VALENTIN, is staggering. ECF 330 pg. 5.

Given the drug weights involved, the violent nature of the group, and the sentencing exposure for all individual charged, the government is seeking the pretrial detention of almost all the 33 defendants listed in the indictment.   Every single one of these individuals was an entrenched, committed member of the Weymouth DTO—with some defendants going back to 2016, 2017, and 2018, in terms of their activities on the 3100 block of Weymouth (defendants JOSE ANTONIO MORALES NIEVES, ANGEL RIOS-VALENTIN, RAMON ROMAN-MONTANEZ, NANCY RIOS-VALENTIN, JAVIER RESTO-BERRIOS, CARLA DIAZ-RESTO), others steadily working on the block since the 2020, 2021, and 2022 time frame (defendants ANGEMILL GONZALEZ-CLAUDIO, ELLIOT MATTEI-RODRIGUEZ, KELVIN AGUAYO-GARCIA), and even what-may-be newer members of the Weymouth DTO demonstrating a steady record of involvement in the DTO at least for many months.

## IV.    CONDUCT SPECIFIC TO SONIA RAMOS DE JESUS

Defendant SONIA RAMOS DE JESUS cannot overcome the presumption in favor of detention.   She worked as a steady member of the Weymouth DTO for many years—with drug trafficking arrests on the 3100 block of Weymouth going back to 2016—and she took regular shifts as a street-dealer on the block.   For these reasons, and as further discussed below, the defendant presents a serious danger to the community if released as well as a risk of flight.

As noted above, defendant SONIA RAMOS DE JESUS is charged in Count One, the conspiracy count, as well as in Count Seven, pertaining to her participation in a sale of fentanyl on January 3, 2025.   Her role in the organization was to sell drugs on the 3100 block of Weymouth Street and on its expanded territory of F and Clementine Streets.   In January 2019, she was observed by law enforcement over a three-day period of time as engaging in, and assisting with, numerous hand-to-hand sales on the 3100 block of Weymouth Street along with co-defendants CARLA DIAZ-RESTO and JUAN GOMEZ-RESTO.   At that time, the group was selling a stamp of fentanyl branded "GAME OF THRONES."   Defendant RAMOS DE JESUS participated in a controlled buy with an FBI confidential human source on January 3, 2025, on the 3100 block of Weymouth Street, which was for one bundle of heroin/fentanyl stamped "SHAMA."   On June 11, 2025, she made another sale to an FBI confidential human source—this time selling 32 packets of fentanyl stamped "PACMAN" and eight flip-top containers of crack cocaine—near the corner of F and Clementine Streets, which was also part of the territory controlled by the Weymouth DTO.   Both the January 3, 2025 and June 11, 2025 transactions were caught on camera.   In the below photo, taken on June 11, 2025, defendant RAMOS DE JESUS is holding a bag of drugs during the sale.



More generally, defendant RAMOS DE JESUS was seen on the pole camera, which was monitored by agents regularly during the course of the FBI investigation in 2024 and 2025, as a regular street-dealing presence on the block.   She also has intercepted calls with JAVIER RESTO-BERRIOS on the court-authorized wiretap for RESTO-BERRIOS' phone, during the May through July 2025 period.

### V.    CRIMINAL HISTORY

Defendant RAMOS DE JESUS has four prior arrests on the 3100 block of Weymouth Street—one of which resulted in a criminal conviction—and a fifth recent narcotics arrest, as well.   As to the defendant's prior arrest that resulted in a conviction, on February 11, 2023, RAMOS DE JESUS made several $20 sales of heroin to undercover Philadelphia police officers,

all on the 3100 block of Weymouth Street, and then told one officer that she was "waiting for more dope" to complete another sale. When she was arrested, she had one bundle with 14 packets of heroin that she tried to discard, a pill bottle with orange containers of alleged crack cocaine, and $172. On April 25, 2025, RAMOS DE JESUS was convicted of felony a drug-trafficking offense in the Philadelphia Court of Common Pleas and was sentenced to two years' probation.    **Notably, the evidence in this case proves without question that RAMOS DE JESUS did not abide by her terms of probation:**    The controlled buy that RAMOS DE JESUS assisted with on June 11, 2025, which is caught on camera clear as day, occurred during her 2-year term of probation.

Defendant RAMOS DE JESUS has several earlier arrests for drug-dealing and related activities on 3100 Weymouth Street.    On both May 15, 2018, and August 7, 2018, defendant RAMOS DE JESUS was arrested by Philadelphia police officers on the 3100 block of Weymouth after she was observed engaging in hand-to-hand street sales of fentanyl/heroin and crack cocaine.    On May 15, 2018, she had been selling fentanyl/heroin stamped "Santa Muerte" (in July 2018, health officials investigated a sudden spike of drug overdoses in the Philadelphia area thought to be caused by a batch of heroin/fentanyl stamped "Sante Muerte"[1]).    On August 7, 2018, she had been selling fentanyl/heroin with other stamps, as well as cocaine and crack.

The defendant has a fourth, even earlier arrest on the block—from August 27, 2016—which is arguably the most concerning of all.    On that occasion, a Philadelphia police officer stopped a car with no headlights at 11:00 p.m. on the block, and numerous Weymouth DTO

---

1  https://www.nbcphiladelphia.com/news/national-international/overdose-spike-drugs-heroin-philadelphia-area-montgomery-county-hospital/219552/ (July 22, 2018)

members (and persons affiliated with the DTO at the time) proceeded to attack the police officers involved.   Karyna Hernandez, defendant RAMOS DE JESUS's daughter, punched one of the police officers in the face several times with a closed fist.   Co-Conspirator 11 then shoved the same police officer's head into the hood of a car.   Co-Conspirator 11 continued to punch and kick the police officer in the face as she attempted to take Co-Conspirator 11 into custody.   At this point, Karyna Hernandez punched another police officer in the side of his face, and she punched a third police officer with a closed fist.    Defendant RAMOS DE JESUS, who was on the block, then joined in on the attack, grabbing the third police officer around his neck with another female, as Co-Conspirator 11 came over and punched the third police officer several times in the head.   (DC No. 16-24-083158).

Just recently, on September 30, 2025, defendant RAMOS DE JESUS was arrested by Philadelphia police officers for intentional possession of a controlled substance. MC-51-CR-0018229-2025.

All of these facts appeared in the government's detention motion and were considered by the Magistrate.

## VI.    <u>FLIGHT RISK</u>

Defendant RAMOS DE JESUS faces a lengthy sentence under the Guidelines given the drug weight involved in the Weymouth DTO's conspiracy and the amount that was reasonably foreseeable to her.   A sentence of this magnitude creates an incentive to flee.   She also has no apparent legitimate employment locally, or significant local caretaking responsibilities known to the government, that would overcome the incentive to flee.   Indeed, the only record of legitimate employment that the government is aware of for the defendant was in the second

quarter of 2023, in which she earned approximately $2,600 at a staffing company.

## VII.    DANGER TO THE COMMUNITY

Defendant RAMOS DE JESUS presents a danger to the community that no conditions of pretrial release can sufficiently protect against.   She is a committed member of a violent drug-trafficking organization that has sold kilograms of fentanyl, cocaine, and crack cocaine over the years, and has used firearms, threats of violence, and actual violence, to promote its objectives and punish informants.   She has participated in a physical attack against a police officer.   The fact that she continued her participation in the daily drug-trafficking activities of the Weymouth DTO, after her arrest in February 2023 as well as after her conviction in April 2025 (and sentence to two years' probation), makes abundantly clear that there are no conditions of pre-trial supervision that will stop her from selling drugs and/or collecting drug proceeds for the Weymouth DTO.

## VIII.    THE DEFENDANT'S PROPOSED RELEASE PLAN, INVOLVING HER DAUGHTER, IS UNACCEPTABLE

Defendant RAMOS DE JESUS has consistently presented one option for a release plan in these proceedings:   The proposal that she reside with her daughter, Karyna Hernandez, at 2150 Tyson Avenue, in Philadelphia, on electronic monitoring.   She presented that plan to Pretrial Services, to Magistrate Judge Cinquanto, and again presently, to this Court.   Indeed, in her Motion for Release with this Court, the defendant describes "the Tyson Avenue home [as] Ms. De Jesus' only option."   Def. Mot., at 4.   Although Pretrial Services found that proposed release plan adequate—to ensure the defendant's appearance at trial and to ensure her compliance with conditions of pretrial release—the government respectfully submits that the Pretrial Services Office did not have the benefit of knowing the details of Ms. Hernandez's arrest

- 17 -

record, her history of deep personal involvement with the Weymouth DTO, and her sensitive position in the Government's case and ongoing investigation, when it made this recommendation.   Magistrate Judge Cinquanto, after learning this information from the Government at the Detention Hearing, overruled the determination of the Pretrial Services Office and agreed with the Government—deciding that releasing RAMOS DE JESUS to Ms. Hernandez, as a third-party custodian, at 2150 Tyson Avenue, was not acceptable.

That decision was the correct one.   Karyna Hernandez was the long-time paramour of the former leader of the Weymouth DTO, Felix Rios-Valentin a/k/a "Felo" (named as Co-Conspirator 1 in the indictment).   Ms. Hernandez has for many years owned 3135 Weymouth Street, which had been Felix Rios-Valentin's residence before he moved to 2150 Tyson Avenue with Ms. Hernandez.   According to City of Philadelphia property records, she is still listed as the owner of this residence.   Meanwhile, 3135 Weymouth Street is a location that had been used by the Weymouth DTO for many years to stash narcotics and complete drug sales, and it was also where defendant JOSE SANTANA-GONZALEZ a/k/a "Chipi" used to reside before he was arrested in this case.   The controlled buy from SANTANA-GONZALEZ that was performed on March 9, 2025, occurred inside of 3135 Weymouth Street.

Karyna Hernadez has two prior arrests that both occurred on 3100 Weymouth Street, one of which resulted in a conviction.   In October 2019, she was arrested by PPD and DEA Task Force personnel for aggravated assault and resisting arrest on 3100 Weymouth Street. At the time of arrest, Hernandez impeded PPD Homicide Unit and DEA Task Force personnel from entering a property on 3100 Weymouth Street for which law enforcement was attempting to execute a search warrant on. She subsequently became combative while being placed under

arrest, which led to her biting and kicking DEA Task Force Officer Gregory Wallace.    The

police report from that incident states that after Officer Wallace attempted to place Hernandez

into custody, "Hernandez immediately became combative and resisted arrest.    P/O Wallace took

Hernandez to the rear of a marked police vehicle attempting to place her in the back seat.    As

officer Wallace attempted to seat Hernandez in the rear, she leaned forward biting Officer

Wallace on his lip.    The Officer was able to pull away from Hernandez who began kicking

towards the officer striking him several times in the chest, arms and neck."    Officer Wallace

was treated at Temple Hospital for his injuries.    *See* Phila Police Dep't Arrest Report, 10/8/19,

DC # 19-24-099256.    On June 21, 2023, Hernandez pled guilty to a summary offense of

Disorderly Conduct Hazardous/Physical Offense and was sentenced to 90 days' probation.

Meanwhile, in August 2016, Karyna Hernandez was also arrested by PPD for aggravated assault

on police and resisting arrest while on 3100 Weymouth Street, as described above.

Karyna Hernadez was also present at the scene of the murder of Felix Rios-Valentin and

is connected to potential evidence in that case—as well as in this case—as well as to two

firearms.    The background facts are that on November 6, 2024, at approximately 12:38 p.m.,

PPD officers responded to a radio call for a male shot near 2150 Tyson Avenue.    Upon arrival,

PPD encountered Ms. Hernandez standing outside of a white BMW Sedan with PA Tag MLK-

5269, a car that was registered to Ms. Hernandez at 2150 Tyson Avenue.    The BMW had been

parked around the corner from 2150 Tyson Avenue.    Inside, Felix Rios-Valentin was found in

the driver's seat, suffering gunshot mounts.    He was transported to a hospital, where he was

pronounced deceased.

While PPD personnel were attempting to provide medical aid to Felix Rios-Valentin, Ms.

Hernandez grabbed and removed a black fanny pack from the BMW. PPD officers instructed her to leave the bag in the vehicle because it was part of the crime scene. PPD officers then attempted to retrieve the bag from Hernandez, and at some point, the bag fell to the ground. Inside, officers found a black Glock 19 Gen 5 with a tan grip, serial #BRBM362, loaded with fifteen live rounds with one in the chamber. This firearm also appeared to have a machinegun conversion device ("MCD"), which is an after-market item that can be installed in a semi-automatic firearm in order to convert it to a fully automatic machinegun– i.e., an MCD allows a semi-automatic firearm to shoot more than one shot automatically by a single function of the trigger, without manually reloading it, in violation of 18 U.S.C. § 922(o). The gun was placed back inside the BMW and the information was relayed to homicide detectives after they arrived at the murder scene. It appeared that Ms. Hernandez had attempted to retrieve the bag with the loaded firearm and MCD so that she and Felix Rios-Valentin were not subjected to further law enforcement scrutiny.

Ms. Hernandez was transported by PPD to a police station for questioning.   During the questioning, the police obtained two cell phones from her possession, for which she provided the passcodes.   Ms. Hernandez stated that the first phone had belonged to Felix Rios-Valentin and the second phone had belonged to her.   A federal search warrant for those phones was obtained on February 19, 2025, *see* 25-MJ-343 (Wells, MJ), and the phones are still being processed for evidence connected to the Weymouth DTO's drug-trafficking affairs.   Both of the phones had been subscribed to by Karyna Hernandez at 2150 Tyson Avenue (the first had an activation date of April 27, 2021 and the second had an activation date of October 12, 2023), and both had considerable contacts with members of the Weymouth DTO during the two-month period

leading up to November 6, 2024—the first phone had contacts with JAVIER RESTO-BERRIOS (eight times), RAMON ROMAN-MONTANEZ (six times), KELVIN AGUAYO-GARCIA (five times), and NANCY RIOS-VALENTIN (four times); and the second phone had contacts with NANCY RIOS-VALENTIN (nine times), JOSE ONEILL ORITZ BETANCOURT (eight times), and Elizabeth Valentin-Colon, the mother of NANCY RIOS-VALENTIN and Felix Rios-Valentin (27 times).

PPD Homicide Detectives also obtained and executed a local search warrant for 2150 Tyson Avenue, Philadelphia, PA 19149, which was where the murder appeared to take place. Upon execution of the search warrant, PPD Homicide recovered an additional firearm from inside the residence. This firearm was a black Taurus G3C, serial # AGC082447, loaded with eleven live rounds and one in the chamber.

In addition, in October 2019, in addition to the DEA executing search warrants at two properties on 3100 Weymouth Street, they also arrested Felix Rios-Valentin.   Felix Rios-Valentin was thereafter incarcerated in Philadelphia for a number of months.   During this time, in several jail calls between Felix Rios-Valentin and Karyna Hernandez, in 2020, she appeared to be aiding him with criminal conduct related to the Weymouth DTO—providing him information about money owed or received, agreeing to contact family members of other DTO members who were incarcerated in order to pass messages on or help arrange meetings while they were in jail, or to assist "enforcers" for the DTO.

The upshot is that Karyna Hernandez **owns a property on 3100 Weymouth Street (3135 Weymouth Street)** used by the Weymouth DTO for drug-trafficking purposes including in March 2025 (for a controlled buy); she sustained **two arrests (one of which led to a**

**conviction) on 3100 Weymouth Street in 2016 and 2019**, each time for hindering law enforcement activities on the block and for taking violent acts against police personnel (in 2016, punching and swinging, in 2019, biting and kicking); she was **present at the scene of the murder** of the former DTO leader in November 2024, which was either inside of or right outside of her home (and where the defendant proposes being released currently) of 2150 Tyson Avenue; she had **two phones in her possession in November 2024, for which she knew the passcodes**, which in turn had dozens of contacts with Weymouth DTO members; she attempted to **retrieve a firearm with a machine conversion device** from the scene of Felix Rios-Valentin's death in November 2024, while inside of her house at 2150 Tyson Avenue, she possessed or at least had access to a second firearm; and following Felix Rios-Valentin's arrest in late 2019, she was captured on jail calls agreeing to assist Rios-Valentin with activities related to the DTO while he was incarcerated.   Given that Karyna Hernandez was in a longtime romantic relationship with the prior DTO leader—who in turn committed all his time to managing the DTO's street operations on 3100 Weymouth Street—she would be in a position to have an extraordinary amount of knowledge about the DTO's organizational structure, sources of supply, involvements in murders, and other matters.   She is a person of interest in the ongoing FBI investigation and at the very least, is on the list of potential witnesses to be approached by law enforcement.

For these reasons, it would be dangerous to the community, and could compromise the ongoing FBI investigation, for the defendant, SONIA RAMOS DE JESUS, to be released to the home of her daughter, Ms. Hernandez, as RAMOS DE JESUS awaits trial in this case.    Karyna Hernandez is not a suitable third-party custodian who can be trusted to ensure that RAMOS DE JESUS severs ties with the Weymouth DTO and refrains from future drug-trafficking activities

with that organization (or any other).    Although the defense claims that these points about Ms.

Hernandez's connections to the Weymouth DTO are "both vague and inappropriate" for a

pretrial detention evaluation concerning defendant RAMOS DE JESUS, the defense is wrong:

The suitability of a proposed third-party custodian is *squarely* within the province of the court's

considerations in a pretrial detention analysis, when determining if a defendant has overcome the

statutory presumption in favor of detention.    *See United States v. Klein*, 539 F. Supp. 3d 145,

155 (D.C. May 4, 2021) (defendant did not overcome presumption when he failed to present a

release plan with a suitable third-party custodian, given concerning text messages his mother, the

proposed custodian, had sent); *United States v. Golden*, 2021 WL 51459, at *5 (E.D. Pa. Jan. 6,

2021) ("His partner's willingness to serve as third-party custodian does not mean she is able to

adequately supervise him."); *United States v. Washington-Gregg*, 2020 WL 1974880, at *10

(M.D. Pa. April 24, 2020) ("While the defendant has proffered his mother as a potential third-

party custodian, we find that this proposal does not satisfy the exacting burden of proof which

the defendant must meet to overcome the presumptions established by law which

favor pretrial detention"; court noted that the mother "herself convicted of drug possession,

placed on probation, and that a bench warrant issued" and that in the past, "the defendant's

mother ha[d] not been able to restring or deter her son's misconduct").

    But even if defendant RAMOS DE JESUS were able to propose a different third-party

custodian to this Court—such as a treatment center or half-way house—for her release pending

trial, the defendant's release would not be warranted.    The defendant has been charged as a

committed member of a violent DTO that ran one of Philadelphia's most entrenched fentanyl

corridors for nearly a decade.    Her personal history of continuous street-dealing activities for

this DTO for at least the past six years—including while under a term of court-imposed probation for her 2023 conviction—establishes that she presents a danger to the community and that release is not warranted. *See United States v. Legaretta*, 2025 WL 2964017, at *4 (10th Cir. Oct. 21, 2025) ("We have explained that '[s]afety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community' and 'the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the safety of any other person or the community.'" (citing *United States v. Cook*, 880 F.2d 1158, 1161 (10th Cir. 1989)); *United States v. Gibson*, 481 F. Supp. 2d 419, 423 (W.D. Pa. 2007) ("[T]he danger present in this case is that if release the defendant will continue to traffic in illicit narcotics. The government proffered evidence that some of defendant's convictions for drug related offenses occurred while defendant was on state supervision related to other crimes. Given defendant's history of continuing to engage in drug trafficking of illicit drugs despite the fact that defendant is on court supervision . . . this court predicts that defendant will likely continue to engage in the same behavior if he is given the opportunity to do so."); *United States v. Amparo*, 2005 WL 2877737, at *2 (E.D. Pa. Oct. 7, 2005) (presumption not rebutted where Government "charged the defendant with the very serious crime of conspiracy to distribute and possession with intent to distribute two kilograms of cocaine powder" and that the defendant "allegedly committed these crimes while on probation by the Philadelphia Court of Common Pleas").

### IX.    CONCLUSION

Together, these facts establish that no condition or combination of conditions would reasonably assure the defendant's appearance as required and/or the safety of the community, and he is unable to overcome the presumption in favor of his pretrial detention. The

government respectfully requests that the Court reject the defendant's appeal and order him detained pending trial.

Respectfully submitted

DAVID METCALF
United States Attorney

s/ Jason D. Grenell

_____

JASON D. GRENELL
SARA A. SOLOW
Assistant United States Attorneys

<u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the Government's Response to the Defendant's Appeal of the United States Magistrate Judge's Order of Pretrial Detention was served via the Court's electronic filing service on:

Laily Sheybani
lsheybani@postschell.com
*Counsel for Sonia Ramos De Jesus*

 s/ Jason D. Grenell
JASON D. GRENELL
Assistant United States Attorney

Date:   November 13, 2025

26